In re JS Kalama, LLC. John D. Neller, counsel for Appellant JS Kalama, LLC. Douglas R. Paul, counsel for Appley Wilson Oil. Okay, Mr. Neller, do you want to reserve a little time? Yes, Your Honor. I guess whatever time I might have left. Let's say three minutes at this moment. Okay. Whatever questions may be raised by the reply. Okay. Okay, go ahead. I am John Neller, Your Honor. If the court please. Your Honors, good morning. I represent the appellant in this case, which is the debtor in the Chapter 11 case below. We're here today because the court entered an order paying, the bankruptcy court entered an order to distribute some surplus funds out of the bankruptcy estate that should be going to be otherwise paid to the debtor to a third party who is not a party to the bankruptcy case. But it's a party as to whom the estate had an obligation, correct? Let's just say that again, Your Honor. It's a party as to whom the estate had an obligation. The estate did not have an obligation to the, to that party. There was a prior order, if the court is referring to the May order, then there was a May order in which there were three parties that came before the court to, for the approval of a settlement agreement. Between those three parties, and none of those parties were parties of the bankruptcy case. Somaracas, Inc. was a tenant to the debtor. Let's, let's go back to the beginning, because I think that's where there may be a misconception here, okay? Okay, fine. All right, there's a trustee appointed. The trustee decides to sell the property. Well, I'm sorry, the trustee decides to reject the lease and eject one person with the Somaracas name from the premises, and then to sell the property for what sounds like an amount that was in excess of the amount necessary to pay all claims, correct? Absolutely. All right, and at that point, there was what was effectively kind of a setoff, right? Because the other obligation that the estate undertook was to commence an adversary proceeding that would clarify some ownership rights to some materials left on the premises, be a vehicle to get the premises into a condition whereby the buyer could effectively make use of them and pursue a rent claim, right? Correct. It's absolutely an estate obligation, correct? It's effectively, it's effectively a setoff against the seven million bucks when you think about it, right? That was correct. Well, did anybody raise that issue then, that this is an inappropriate setoff? Well, I think the... Let me help you with the answer, no. Nobody did, okay? No, I don't, yeah, effectively no. Yeah. Yeah, there were arguments about that. I know, I know. And by the way, I'm with you, this is an unusual case, okay? This is not your run-of-the-mill, how elevens go. I'm not resistant to that idea at all. What I'm trying to suggest is this dispute is, one way to look at it, it's baked in from the very first transaction here. From the very first transaction the estate undertakes to do something else rather than just transfer the property. And that's a monetary obligation, correct? I think that the confusion here, if there is confusion, is that that $500,000 has already been paid to Wilson Oil. That offset has already been paid. What we're talking about is an additional $475,000. Yeah, but that results from the, from the adversary proceeding, correct? The 500k was a holdback, right? That's a whole other thing. Correct. Okay, but doesn't the original agreement obligate the estate to undertake an adversary proceeding and basically give the benefits of that adversary proceeding to the buyer? It did do that. Okay, I said that now we're starting from the same place. Now go ahead, I'm sorry I interrupted you so much. Go ahead. Well, I guess what I'm, I'm trying to track with the court a little bit here. Yeah. And try to figure out what the concern is about that particular issue. But yes, there was an adversary proceeding. That adversary proceeding ended up being assigned to Wilson Oil. That's the source of this $475,000 payment. Right. What happens subsequent to that is that the tenant of the debtor and the tenant's principal, John Somerakis, same principal was in JS Kalama, no question about that. Entered into some agreement that said that there was going to be an auction of the tenant's property and the proceeds of that we're going to pay. Some of that may go to the debtor, not the debtor, some of that may go to Somerakis, I think some of it may go to Wilson Oil. And if there wasn't that, then they agreed that there was going to be some distribution to Wilson Oil and perhaps the source of those funds would be out of the JS Kalama estate. What's the perhaps part of that? There's no perhaps to it at all. Well, there is a perhaps to it because there may be. But the only perhaps is we may get paid from auction proceeds which didn't work out, right? There you go. Okay. I got it. Okay. Okay. So that's the source of this disagreement at this particular point. Right. The problem that we have with it, the crux of this whole thing is the focus of what was the order in June. Excuse me. I guess it was a May order. We sometimes talk about May, sometimes June, sometimes August. I think the two orders that we have to focus on are the one in May, which is the order on the settlement of the various claims, one of which was the Wilson Oil claim, Wilcox legal claim. And the second one is the it was actually entered in August 5th. And I think we sometimes refer to that as a June order because that's when the motions commence. In any event, the May order incorporated by reference, the motion itself. And if I go through the motion papers, I think that I added up last night I was looking at them like 14 references where it said this $475,000 obligation is not an obligation of the estate. No, it doesn't say that. It says there's no liability. That's a very different concept. I'm not sure how that would be a different concept. Okay. It's either an obligation or I mean, a liability is an obligation of the estate. But it doesn't have to be. You can be obliged to do things and not create a liability if you don't do it. And that's exactly what it did. Created a liability? No. There's a difference between an obligation to do a thing and a liability if you don't do it. Those are two different things. I can go back to the language of that particular thing there. That order says that it doesn't impose any obligation on the trustee to make that payment. It's in the same group of language where it says this is not a debt of the estate is an obligation of the estate. There's no obligation of the trustee to make that payment. That is the whole basis of the final of the order that was entered by the bankruptcy court in May. And that's the whole crux of this particular appeal. And I simply don't agree with you about what it says. So that's not a good place for us to be. Okay. But keep going. Well, I'm happy to explore that further. Well, what I think the order says is that it will not create a liability for the trustee if the monies aren't paid. There's reasons why. We don't have to speculate. I think we're going to hear chapter and verse from your worthy adversary here about why it was worded that way. But what I'm trying to suggest to you is the notion that that takes the estate out of this entirely is, in my view, just not correct. I mean, what what's being adjudicated now is an estate obligation. This is not parties who have nothing to do with the bankruptcy at all. That's a mischaracterization of what the dispute is, in my view. And that's the fundamental problem I'm having with your jurisdiction argument. If you want to argue that there was something that went wrong before that we can address now, I'm all ears. I don't know what that is, but I do not see this as a jurisdiction argument. And one of the reasons why is clearly we have an estate that is not yet wrapped up. There are monies to be paid. And it's a question of who they're going to get paid to. That is, if that ain't a rising in, I don't know what is. OK, you don't even have to get too related to a jurisdiction. That's a rising in jurisdiction. Period. End of story. So so if you want to go further with the jurisdictional argument, you can. If you want to talk about something else that's fundamentally wrong about where this case ended up, I'm all ears. You tell me what you want to do. OK, well, if we go back and look at the language in the mail order, what it says is any surplus funds remaining in the possession of the debtor after the final distribution by the trustee. Shall be distributed to Wilcox to the extent needed to pay the claim settle amount. It also says. There is no obligation. And I mean, there's no obligation of the estate pay or the proposed order on this motion that obligates the trustee to make any payments to any person or entity other than the debtor. Well, wait a minute. If I read the whole paragraph, are you suggesting that sentence means that the debtor has beside the estate has no obligation to pay the 475? What are you saying? I am. OK. All right. OK. Well, that. OK. Yeah. The state has no obligation to pay the 475. I think the scheme that is proposed by the motions. Yeah, the declarations and the order is that the debtor gets the payment. And Mr. So Maracas, if he receives a distribution from the estate is to pay the Wilcox and Flagle from the 475, obviously, if it arises. And I think that is the scheme. It's not that that comes out of the estate before other creditors, because coming out of the estate before other creditors, before creditors of the estate, actual creditors of the state are coming out before people who might otherwise be in the loan. In the priority chain under either state or federal law are being cut out of the. Well, well, let's let's pause on that for a second. Nobody raises it. This was eminently raisable as an admin claim. Period. End of story. OK. It wasn't for reasons that are up to WNF to explain to us. If you're trying to tell me this had no place in the distribution scheme, that is dead wrong. This this could well have been an admin claim. It didn't happen to be one that doesn't make it something that we distribute the surplus and then we pay that. I just I am just not with you there on the distribution scheme at all. Well, and I'm not with you on this could have been an administrative claim because it's not there's no cost of administration involved in this particular matter. It's not something that would be it's part of an approved sale motion. Part of an approved sale motion. Well, the approved sale motion says that it doesn't go directly to Wilcox and Flagle. The approved sale motion says it refers and incorporates the motions, the language of the motions, and the order is very short. Wait, wait, wait. I mean, let's let's the sale motion incorporates other matters. We're talking about the sale motion now. OK, the sale motion creates an obligation of the estate to commence an AP and gives the benefits of that to Wilson and whatever. Right. Yes. The order itself, not the border incorporates the sale. OK, you're getting close to three minutes here. Maybe you want to regroup a little bit and think. Well, I'm happy to continue. OK, I'd rather answer the court's questions than just ramble on. OK. Oh, OK. I will. I will pause. OK. Morning, Your Honors. Douglas Paul of the Perkins Coie firm. May it please the court. I'm here for it's Wilson Oil doing business as Wilcox. I don't I don't mean to butcher names. Right. Can I just begin with what I suspect is your were their adversaries concern here? This begins as an overpayment. Right. I mean, the seven million dollars appears to be more than enough to pay all the claims. So there's a built in offset with respect to the rent claim. Right. I mean, that's the way you can look at it. OK, so that is that's kind of sort of from his perspective. That's kind of sort of in a state obligation, but maybe not exactly one either. The obligation is to commence an AP. And when you're successful to give the benefits over to your client. Correct. That's that's one way to look at it. OK, what's the other way? Yeah. The the adversary proceeding was really to set up a platform to have a discussion about settlement because there was so much junk on the site that we figure out a way to get leverage. To move that stuff. OK, that's fair. That's a fair point. But if I can if I can play my point forward just a little bit from their perspective, is it crazy to look at this and say, OK, that was a quasi estate obligation to go seek the rent and then pay it to somebody else. But when it does get settled, it's not from from their perspective, it doesn't look like an estate obligation anymore. It looks like the estate's sort of out of the line of fire here. And there is the ambiguous language. I mean, I think you have to simply ignore half of the paragraph. You're worthy of his quoting from to to get to his point. I don't know how we do that under contract principles in the. Yeah, right. But it doesn't kind of look like this was an estate obligation. It's not really an estate obligation now because we've resolved it with respect to the people who are the targets of the AP because it is settled. Yeah. Meaning. Yeah. So is it still really an estate obligation? And I think that's kind of his point. And I guess it is. It's not a bad one. It's not. It's not bad. Yeah. And we want to add the assignment to that as we are dealing with. I would like to just add the assignment of that as well, because the AP was assigned. I mean, the right was assigned, wasn't it? It was assigned as part of the settlement agreement. So prior to the settlement agreement being approved, the estate had the obligation to run the adverse. I think that gets to Judge Lafferty's point at some point in time. And, you know, and the assignment transferring the ownership seems to possibly affect the estate, not a state. Right. Because, you know, while the estate's running the the AP, clearly. But then you assign the rights under that AP and the benefit of that through the settlement. That's I like that. I'd like you to answer Judge Lafferty's question. But I want you to. You asked her way better than I do. I want you to add that that overlay to it, because essentially that's when it transferred. It transfers when the settlement agreement is approved. And if you look at why doesn't it transfer when the assignment happened before the settlement or as part of it's happening. So so it's a two step process. The sale agreement required the adversary proceeding to be brought by the estate, by the trustee. The well, and it contemplated an assignment, correct? It's a contemplated, but it didn't do it at that moment. And you have to go go kind of deep into the record. But it's supplemental appendix page one hundred. And that's the purchase agreement. And it talks about the mechanism of when the assignment is going to actually move from the estate or the trustee to my client. And that occurs either when there's a judgment. Well, there wasn't a judgment in the adversary proceeding or when we accept it. So until we accept that assignment, it's a burden on the estate to manage and run with the adversary proceeding. So so am I getting I'm not sure I'm getting to the concern of the question, though. That's the mechanism of when it moves. And part of that, this was a settlement agreement that wrapped up a bunch of different things. Well, we'll come back, I suspect, to who signed off on the settlement and who thinks they didn't. Maybe. Yes. Now believes they didn't. But the effect of the settlement agreement, then, is to at least nominally to turn something from what was clearly an estate obligation to something that's not so clearly an estate obligation. Is that fair? Yes. OK. And that might be where what's rubbing the dead of the wrong way here is that that's being enforced and it's not really an estate obligation. So why should that be invading the surplus? Because this was part, again, of a comprehensive settlement that brought significant benefits to the estate. And so it's not just as as the appellant argues, some narrow agreement or narrow obligation. It is a it's part of a package. And we agreed to host this auction on our property. We agreed to give the estate very early priority refunds or receipts from proceeds of the auction. We agreed we agreed to step back on structural restoration of the site. But a bunch of these pieces of machinery coming out were going to cause damage in the original settlement agreement. That was the one fully signed and filed with the court. We had those coming out as a cost of sale. That was a top priority return. We agreed to step back on that as part of the order. So, again, I'm looking for benefits to the estate of us agreeing to host this auction and agree to a flow of funds that benefit the estate to put the 475 settlement in context. I think everybody expected this 475 was going to come out of the auction. We had heard big things about the value of these pieces of property. It just didn't. So here we are at the end of the auction. We don't have it. I'm sorry. We had this sort of backstop. OK, let me get two questions out there, which I'm sure you're going to want to deal with. And I was going to mount sooner rather than later. Look, you go to a hearing. There are objections with respect to the settlement at some point. Maybe it's ambiguous. Maybe in your mind, it's not at all. The parties agree that they're going to seek a consensual order. That's right. And an order is entered. Correct. And from your perspective, it resolves all the objections, correct? That's what was said. Is there any ambiguity about that in your mind? Was there any ambiguity raised by the fact that there were some, as one would expect, there were some modifications to the eventual form of the order? And there's a little bit different procedure with respect to the auction proceeds, I think. There was nothing related to the surplus. Nothing related to the claim settlement amount, right? That didn't change. We conceded a number of things. Well, there's a little bit different mechanism for how the auction proceeds might get paid out. There's a doubling of the holdback that is coming back. So we're going to replenish the holdback. We are going to also replace the holdback. So that really frees the estate to go away and we'll just deal with the site at that point. So we added another layer of full replacement of the holdback for the estate. So it's your position that the debtor is bound because the debtor signed the sale agreement, because the debtor made an objection and then settled the objection? How is it that you bind the debtor? I think the key thing for binding the debtor is not so much that they raise an objection, raising all these specific things that they're now bringing back again. It's that they show up at the hearing and they withdraw that objection. The more important thing is the following day, the order approving the settlement, which includes the form of stipulation that Mr. Samarakis himself filed individually, that order is approved. And it's worth paying attention to the language in Mr. Neller's email. Samarakis approves the order. Well, Samarakis, who's Samarakis? We have Mr. Neller representing the debtor, and he's speaking in the language that we understood. Mr. Samarakis, he wears three hats here. He's the tenant and he's Mr. Samarakis. I'm not sure what Mr. Samarakis has to do with anything individually. Either the tenant or the debtor. But Mr. Samarakis comes to us with this form of stipulation. The surplus will be yours if you don't get paid out of the auction. We rely on that. That seems like a commitment from the debtor. Mr. Neller wasn't involved. Well, would you say if there was ambiguity meant to be preserved, it should have been? I mean, let's put it that way. That was the time before Judge Lynch. That was the time we discussed it. And it just wasn't. Now, Mr. Neller also makes a point, and he's technically right about the language, that there seems to be this disjunction between the money's going to flow this way, but there's no liability by the estate. So go ahead and give us your thoughts about that. I think the court already has that wired. It's an obligation of the estate to do something, which is expressly provided for in the order. The trustee has obligations. The trustee's obligated or is authorized to go forward and carry out those obligations. But if he fails to do so, there's no liability for the trustee for not doing it. We're not going to come back to the trustee and say you pay us personally or you, the estate, pay us. We're saying these are surplus funds. And if there are no surplus funds, then I guess we get a goose egg here. But there were surplus funds. So the fact that there's a trustee makes this a little bit different. The trustee was very protective, and you can see that in the trustee's response to Mr. Neller's objection. Very protective of people using the debtor label and trying to speak for the debtor. I'm the trustee. I speak for the debtor. Mr. Neller, you're not retained to speak for the debtor. Well, that's how that sort of pushback came from the trustee. We ended up having that called out directly by Judge Lynch. Mr. Samarakis, you file the stipulation. And within an hour, you file an objection to the stipulation. It's Samarakis v. Samarakis. There's a point I want to make sure that we catch here. There is language in the motion that is at odds with the underlying documents in terms of the timing that this is to be a post-bankruptcy transfer to the extent that these funds are in the possession of the debtor. That's what's said in the motion, and it's just simply incorrect. And it's something I should have caught at the time, but I didn't. Mr. Neller has made the argument several times for the first time in his reply that the language of the motion is incorporated into the order. The order incorporates the language from the motion. There is nowhere that we have found that that is occurring. I don't see any citation to that. I don't see it in the order. I don't think it occurred. But on the merits, if that's the argument, it's directly contrary to the documents that we signed and were approved by the court. So that's a problem. Other questions? Well, I mean, does that sort of get to what I'm suspecting your answer is to the Jebba question? No, and I realize I didn't answer your question about this is a liability. So the trustee was being very protective, did not want anything to create a bankruptcy claim or a liability for the estate or for the trustee. This was just surplus funds, and that's why that language is in there. It was in there from the beginning. We had a term sheet in February, February 28th term sheet that, by the way, is a binding document signed by Mr. Samarakis, member of J.S. Kalama, member of the debtor, also signed by the trustee. But the trustee was being more cautious about making binding statements at that point. It hadn't been approved. So that term sheet starts the process of we're going to look to surplus funds as a backstop for the Wilcox payment. That term sheet is specifically incorporated into the settlement agreement, and it's attached. So it's right on the back. So you can see this was a commitment all the way through this deal. And we asked Judge Heston to enforce it, and that's what we're asking this panel to oppose. Well, then let me rephrase the question this way and see if I'm maybe not getting you. If the estate had an obligation to pay the 475 from whatever source you want to call it, if it's an estate obligation, that's one that you could argue has to be satisfied before you pay a resulting surplus to the debtor. If that's the position you're taking, then you could argue JEVIC really isn't implicated because it's something that wouldn't necessarily have to be performed before you would. I mean, the surplus is a residual, right? It's what's left. Now, if that's not what you're arguing, then I think Mr. Neller's got something more to tell us as to why JEVIC might be quite relevant here. So my question is, is JEVIC not applicable because of the settlement and not because of it? That's the other point, right. Not because it's a. . . That we don't have a structured dismissal yet. I don't think that is really the question here. I think it is more back to we have a settlement. We have a consensual. . . I mean, that's a safe harbor under JEVIC. I don't think we really. . . No, I thought there were maybe two bases. It sounds like the first base, as I was describing, isn't really one you're relying on. No. Okay, I got it. Okay, thank you. It seems there's a potential confusion between the use of distributions and JEVIC structured dismissal and then through JEVIC all the references to 726. I think that's part of at least my confusion because you don't have a plan. It's not in 7 and you want payments, and usually that's difficult except if there's a settlement or an agreement pursuant to the sale. And I think that's what Judge Gann is getting at is really how do we look at this because there will be no plan, but there's no structured dismissal yet either. It's close. Right, but this is it. I mean, you want the money now. We want the money as part of the final report and accounting. But there can be no final report and accounting. This is not going to be a 7 and it's not going to be through a plan. So technically there is no final. . . It's just dismissed. But you want the money to flow this way. But the question I think Judge Gann is getting into is it's really flowing as a result, I would say, from the sale through the settlement to the flow. It's not really a distribution, is it? I think that's right. Okay. Thank you. We're a little over the time. Unless anybody have another question, we're good?  Okay. Okay. Mr. Neller, you've got almost four minutes, and I think you've got more to talk about now. Well, if I can go through the. . . Go ahead. Go for it. The notes here, I'm not exactly sure. Where do we begin? The basic problem here is the debtor was not a party to these agreements, and that's kind of the basic agreement, the fundamental agreement, the problem with the whole settlement concept. The debtor didn't sign off on a settlement agreement. The debtor itself did not have any authority to sign off on these agreements. Mr. Somorakis, who signed off on these agreements, had no authority to bind the estate or bind payments out of the estate. He had no authority to agree on behalf of J.S. Kalama. The estate was controlled by the trustee at that particular point in time, and the trustee obviously was taking great pains to not create an obligation that he had to pay out of the estate to Wilcox and Flagle. I mean, that's kind of the fundamental problem that I'm seeing in this whole concept, and I think that's even supported by the motion to distribute funds in support of this supposed ultimate structured settlement of some kind. This all arose because the trustee made a motion to distribute funds and close out the estate, and those funds, the trustee said, would be distributed to the debtor. Wilcox and Flagle objected to that, and so we circled back and had another motion. If the trustee had thought it had an obligation to pay out of the estate, it has said in his motion to pay Wilcox and Flagle, not the debtor. So the interpretation of that language is what's key here, is what is it that the estate agreed to? What is it that J.S. Kalama agreed to? That was all controlled by the trustee, and the trustee did not agree to pay Wilcox and Flagle out of the estate. Does the court have other questions? I don't want to just ramble on if we're not focusing on what the court's concerned. All right. I mean, I guess we should go back to the settlement notion and what sounds like a withdrawal of an objection. If you think it's more complicated than that, go ahead and tell us. What did we agree to? What did we withdraw? We withdrew the objection to the entry of the order. Why would we have done that? Because of the language in the motion and the understandings raised by that language that this was not an obligation of the estate, and that the trustee was not going to be obligated to pay for it. This whole thing, if we even circle back to the beginning, this whole sale was a $7 million sale. The only interest of J.S. Kalama was in the excess proceeds that would be coming out. J.S. Kalama, as an entity coming out of the bankruptcy case, is coming out with some excess funds. It agreed because we had a $7 million sale, and there would be funds coming back to it. What we're ending up with is this wasn't a $7 million sale, it's a $6 million sale. And the funds are not coming to J.S. Kalama. So the whole premise even of the sale starts to fade away in a hurry because the result, the consideration for that sale passing through the estate, the creditors, and the debtor goes away. Does the court have other questions? No. No, thank you very much. Thanks to both of you for your good arguments. We don't see this happy circumstance every day. Thank you, Your Honor. Thank you very much. Okay, thank you. And we will take the matter into submission, and we'll get you a written decision as soon as we can. Thank you very much. Thank you. Nice to see you. Thanks. Nice to meet you.
judges: Lafferty, Spraker, and Gan